618 S.E.2d 446

LOMBARD CANADA, LIMITED, as Subrogee of B & D Lalonde Trucking and Hauling, Incorporated, a Foreign Corporation, Plaintiff–Appellee,

v.

Mark E. JOHNSON, DBA C & L Escort Services, Defendant–Appellant,

and

Wakley Escort Service, Incorporated, Shuman Flag Car Services; and Mary Fiorello, Defendants.

No. 31686.

Supreme Court of Appeals of West Virginia.

Submitted: Sept. 14, 2004.

Filed: May 11, 2005.

Ronald S. Rossi, Martin & Seibert, LC, Martinsburg, for the Plaintiff–Appellee.

Michael D. Lorenson, Corey Palumbo, Bowles Rice McDavid Graff & Love, LLP, Martinsburg, for the Defendant–Appellant, Mark E. Johnson.

Shawn P. George, George & Lorensen, PLLC, Charleston, for Amicus Curiae, Charleston Area Medical Center, Inc.

Amy M. Smith, Steptoe & Johnson, P.L.L.C., Clarksburg, for the Amicus Curiae, Parke–Davis and Pfizer, Inc.

The Opinion of the Court was delivered PER CURIAM.

### PER CURIAM.

This case is before us on a certified question from the United States Court of Appeals for the Fourth Circuit and presents the issue of whether a strictly liable tortfeasor who settled with the injured party, the State of West Virginia, before any cause of action was filed by the injured party may thereafter initiate suit to seek contribution from another tortfeasor whose negligence contributed to the state's injury. Essentially, the question raised is whether an inchoate right of contribution can be asserted by a tortfeasor following a settlement independent of the filing of a cause of action by the injured party. Having recently decided this issue in our decision of *Charleston Area Medical Center v. Parke–Davis*, 217 W.Va. 15, 614 S.E.2d 15 (2005), we determine, consistent with our holding in *Parke–Davis*, that the law of this state does not permit the inchoate right of contribution to be asserted independent of a primary cause of action initiated by the injured party.

### I. Factual and Procedural Background

On March 18, 1999, B & D Lalonde Trucking and Hauling, Inc. (hereinafter referred to as "B & D Trucking"), a Canadian corporation, who had been issued a special permit by this state to haul oversized loads, struck an overpass bridge in Berkeley County while traveling on Interstate 81. The terms of the permit expressly required that B & D Trucking avoid passing underneath the Route 901 overpass on Interstate 81, by exiting the interstate and re-entering beyond this specific overpass.[1] Upon reaching this section of Interstate 81, B & D Trucking failed to comply with the permit terms of exiting the interstate, and, as a result, the truck struck the overpass, causing the state to incur damages in the amount of $222,486.71.[2]

By statute,[3] B & D Trucking was strictly liable for the damage it caused to the overpass bridge, given its illegal operation of its vehicle in violation of the terms of the special permit. Lombard Canada, the insurer of B & D Trucking, entered into a settlement agreement with the State of West Virginia for the amount of $210,000.[4] Pursuant to the agreement, which was entered into on November 20, 2000, the state released B & D Trucking and its insurer from all claims arising from the overpass collision incident.

Lombard Canada, as subrogee of B & D Trucking, filed a complaint[5] in the Northern District of West Virginia against Mark Johnson,[6] a driver of the lead escort vehicle that accompanied the B & D Trucking vehicle, seeking contribution from Mr. Johnson for his role in the subject collision. Through the complaint, Lombard Canada averred that Mr. Johnson's negligence in failing to lead the B & D Trucking vehicle off of Interstate 81 at Exit 20, as required by the terms of the

1. The "Route and Time Restrictions" section of the state-issued permit provided that "[t]his move requires three escorts on all highways—one in front and two in rear. A FRONT POLE CAR IS REQUIRED IN ADDITION TO ANY OTHER ESCORTS TO CHECK ALL OVERHEAD CLEARANCES BEFORE LOAD ENTERS." Additional terms in this section indicated the following: "ON [INTERSTATE] 81 TAKE EXIT 20 EXIT[;] CROSS OVER [and] RE–ENTER [INTERSTATE] 81."

2. This amount represents the costs associated with repairing the overpass.

3. W.Va.Code § 17C–17–13 (1951) (Repl.Vol. 2004).

4. This amount was $12,486.71 less than the actual amount of damages incurred by the state to repair the damaged structure. The terms of the settlement agreement required that if B & D Trucking or its insured recovered any amount of damages over the $210,000 from a third party in a future claim or civil action that it would reimburse the State of West Virginia up to the amount of $12,486.71.

5. The original complaint was filed on March 16, 2001, and an amended complaint was filed on November 15, 2001.

6. Lombard Canada also named as defendants Wakely Escort Service, Inc., Shuman Flag Car Services, and Mary Fiorello. Wakely Escort Services was charged with negligently coordinating the transportation of the load through West Virginia and the other two defendants were sued based on their role as trailing escorts.

state-issued permit, caused the vehicle to strike the overpass bridge.[7]

Following a trial in federal district court on the claims asserted by Lombard Canada, the jury apportioned fault as between Lombard's insured, B & D Trucking, (75%) and Mr. Johnson (25%). The trial court granted Lombard Canada judgment in the amount of $52,500 plus interest, which amount represents twenty-five percent of the settlement amount paid by Lombard Canada to the State of West Virginia. Mr. Johnson appealed the judgment to the Fourth Circuit, whereupon the following certified question was issued to this Court:

> Does B & D Lalonde Trucking, a tortfeasor who was strictly liable to the State and who settled this liability before suit by obtaining a release from "all claims whatsoever which could arise from the damages or any other damages of [the State] which could be based on the incident," have a cause of action for contribution under West Virginia law against Mark Johnson, whose negligence contributed to the State's injury?

In its certification order, the court of appeals indicated that it was "unaware of any controlling decisions of the West Virginia state courts on this determinative question."

## II. Standard of Review

■ Our review is plenary as we made clear in syllabus point one of *Light v. Allstate*

*Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998), in which we stated: "A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court." This standard is consistent with our well-established *de novo* review of all matters presenting questions of law. *See* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) (holding that "[w]here the issue . . . is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review"). We proceed to answer the question certified to us from the federal appellate court.

## III. Discussion

At the time the certified question was lodged with this Court,[8] the issue presented had not been resolved through a decision issued by this judicial body. Most recently, however, this Court was asked to address the same legal question in *Parke–Davis*.[9] 217 W.Va. at 18, 614 S.E.2d at 18. While the facts of that case are admittedly different from those presented here,[10] the legal issue presented is identical: whether a tortfeasor who settles with the injured party before a lawsuit is filed by the injured party can bring a separate cause of action for the purpose of asserting an inchoate right of contribution against another tortfeasor who was not a party to the settlement agreement.

---

7. The pole that was attached to the lead vehicle driven by Mr. Johnson struck the overpass bridge as he drove underneath of it in advance of the B & D Trucking vehicle. Mr. Johnson communicated to the driver of the B & D Trucking vehicle that he had hit the overpass bridge "hard" and that the bridge looked "higher to the left." While the B & D Trucking driver responded by moving his load to the left, he nonetheless struck the overpass bridge as he attempted to pass under it.

8. The Fourth Circuit filed its certification order with this Court on January 29, 2004.

9. The certified question presented in *Parke–Davis* was

> Does the law of West Virginia allow a tortfeasor to negotiate and consummate a settlement with the injured party on behalf of itself, before any lawsuit is filed, which would benefit

also another party claimed to be a second joint tortfeasor, and thereafter obtain a judgment against the second joint tortfeasor in an action for contribution, although the second joint tortfeasor was not a party to, not aware of, and had no notice of the settlement.

In answering that question we reframed it to exclude the language that refers to benefitting another party based on factual findings made by the district court in response to the Fourth Circuit's inquiries regarding the scope of the settlement agreement. *See Parke–Davis*, 217 W.Va. at 24, n. 12, 614 S.E.2d at 24, n. 12.

10. The underlying facts in *Parke–Davis* involved the accidental overdosing of a child while being treated for seizures at a hospital's emergency room. Following the consummation of a settlement agreement between the child's estate and the hospital, the hospital sought contribution from two additional tortfeasors by instituting a cause of action.

■ In reaching our decision in *Parke–Davis* on the issue of whether an inchoate right of contribution can be asserted by a joint tortfeasor through an independent action, one that is distinct from a primary action brought by the injured party, we reviewed both the history of contribution rights in this state as well as the underpinnings for that type of recovery. After recognizing that an inchoate right of contribution was first identified in *Haynes v. City of Nitro,* 161 W.Va. 230, 240 S.E.2d 544 (1977), we proceeded to discuss the procedural mechanism for the assertion of that right. In explanation of that procedure, we cited our holding in syllabus point five of *Sydenstricker v. Unipunch Products, Inc.,* 169 W.Va. 440, 288 S.E.2d 511 (1982), through which we recognized: "In *Haynes* ... we extended a right of contribution to a tortfeasor to bring in as a third-party defendant a fellow joint tortfeasor to share by way of contribution on the verdict recovered by the plaintiff."

■ Just as in this case, the parties in *Parke–Davis* disagreed as to the application of this Court's decision in *Howell v. Luckey,* 205 W.Va. 445, 518 S.E.2d 873 (1999). In syllabus point five of that case, we held:

A defendant may not pursue a separate cause of action against a joint tortfeasor for contribution after judgment has been rendered in the underlying case, when that joint tortfeasor was not a party in the underlying case and the defendant did not file a third-party claim pursuant to Rule 14(a) of the West Virginia Rules of Civil Procedure.

The issue that remained following this Court's ruling in *Howell* was whether, after concluding that a tortfeasor who chose not to implead another tortfeasor in the primary cause of action could not seek contribution through a secondary cause of action, this Court would prohibit a tortfeasor from asserting an inchoate right of contribution in an independent action where the injured party failed to bring suit due to the consummation of a settlement agreement with one tortfeasor.

As in *Parke–Davis,* the party in this case that seeks to pursue contribution through an action independent of one filed by the injured party argues that our ruling in *Howell* does not extend to situations where the injured party fails to bring suit due to the consummation of a settlement agreement. Conversely, the oppositional parties argue strenuously that the inchoate right of contribution can only be asserted in an action initiated by the injured party through means of third-party impleader.

Upon being squarely confronted in *Parke–Davis* with the question of whether there was any basis for extending the inchoate right of contribution outside the confines of a primary cause of action filed by an injured party, we recognized that the pivotal underpinning of any contribution claim is "a common obligation owed to an injured party." *Parke–Davis,* 217 W.Va. at 23, 614 S.E.2d at 23; *accord Sydenstricker,* 169 W.Va. at 448, 288 S.E.2d at 516 (stating that "[i]t is this common or joint liability to the plaintiff on the part of joint tortfeasors that gives rise to a cause of action for contribution"). And we concluded in *Parke–Davis* that where a settlement agreement is reached between the injured party and one tortfeasor, the predicate common obligation owed to the injured party cannot be manufactured by means of an independent action filed by the settling tortfeasor against another tortfeasor. Critically, the substantive grounds for invoking the inchoate right of contribution were determined not to be present in *Parke–Davis* based upon the voluntary payment by one tortfeasor of a settlement amount as opposed to being compelled legally to make such payment due to the rendering of a judgment. *See Parke–Davis,* 217 W.Va. at 23, 614 S.E.2d at 23 (recognizing that voluntary nature of settlement precludes conclusion that settling party seeking contribution from other tortfeasor was " 'forced to pay more than [its] *pro tanto* share' ") (quoting *Sydenstricker,* 169 W.Va. at 441, 288 S.E.2d at 513, syl. pt. 4, in part).

■ Applying these principles to the issue framed by the certified question, we held in syllabus point six of *Parke–Davis:*

The inchoate right of contribution recognized by this state can only be asserted by

means of third-party impleader in an action brought by the injured party against a tortfeasor. Consequently, a tortfeasor who negotiates and consummates a settlement with an injured party on behalf of itself before any lawsuit is filed cannot subsequently bring an action seeking contribution from a tortfeasor who was not apprised of and not a party to the settlement negotiations and agreement.

217 W.Va. at 24, 614 S.E.2d at 24.

■ Because the legal issue presented in this case substantially parallels that which was ruled upon in *Parke–Davis*, we are compelled to conclude that Lombard Canada, as the settling party, is not permitted to assert an inchoate right of contribution against an additional tortfeasor through an independent cause of action. *See id.* Our reasoning for this result, as we explained in *Parke–Davis*, is that the law permits a joint tortfeasor to recover contribution only pursuant to the provisions of West Virginia Code § 55–7–13 (1923) (Repl.Vol.2000) [11] or through means of third-party impleader in the course of a lawsuit that is initiated by the injured party. *See Parke–Davis*, 217 W.Va. at 23–24, 614 S.E.2d at 23–24. Absent the critical procedural predicate of a lawsuit filed by the injured party, the law of this state does not veer from the common law prohibition of preferring not to aid wrongdoers. *See id.* at 22, 614 S.E.2d at 22.

Based on the above discussion, we answer the certified question in the negative.

Certified question answered.

11. That statute provides:
Where a judgment is rendered in an action ex delicto against several persons jointly, and satisfaction of such judgment is made by any one or more of such persons, the others shall be liable to contribution to the same extent as if the judgment were upon an action ex contractu.
W.Va.Code § 55–7–13.