614 S.E.2d 15

**CHARLESTON AREA MEDICAL CENTER, INCORPORATED,**
**Plaintiff–Appellee**

and

**St. Paul Fire & Marine Insurance Company, Intervenor–Plaintiff**

v.

**PARKE–DAVIS, a Division of Warner Lambert; Pfizer, Incorporated, Its Successor by Merger, Defendants–Appellants**

v.

**Danny A. Rader, M.D.; Terri Miles, R.N.; John/Jane Doe, M.D.; Jane Doe, R.N.; John/Jane Doe, Pharmacist; John/Jane Doe, Pharmacy Technician; John Doe, Agency/Corporation, Third Party Defendants.**

No. 31685.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 22, 2005.

Decided May 11, 2005.

Shawn P. George, George & Lorensen, P.L.L.C., Charleston, for the Plaintiff–Appellee, Charleston Area Medical Center, Incorporated.

Amy M. Smith, Diana Everett, Steptoe & Johnson, P.L.L.C., Clarksburg, for the Defendant–Appellant, Parke–Davis and Pfizer.

ALBRIGHT, Chief Justice.

This case is before us on a certified question from the United States Court of Appeals for the Fourth Circuit and presents the issue of whether a joint tortfeasor, who settles with an injured party solely on behalf of itself before any lawsuit has been filed, may thereafter seek contribution from another tortfeasor who was unaware of both the ongoing settlement negotiations and ultimately the consummation of a settlement agreement. Upon our examination of both statutory and common law, we conclude that a cause of action for contribution upon these facts is not permitted under the laws of this state.

## I. Factual and Procedural Background

The factual predicate for this matter involves the accidental overdosing of a two-year old boy who presented to the Plaintiff Charleston Area Medical Center, Inc. ("CAMC") Emergency Room with seizures. Due to allegedly confusing labeling [1] on the vial of the prescription drug Cerebyx, which is manufactured by Defendant Parke–Davis,[2] the child died after receiving ten times the intended amount of the seizure medicine.

CAMC entered into a $2.5 million settlement agreement with the estate of the deceased child, which was subsequently approved by the Circuit Court of Kanawha County.[3] Neither of the two Defendants, Parke–Davis or Pfizer,[4] were contemporaneously aware of either the settlement negotiations that had ensued between CAMC and the representative for the child's estate or the fact of the actual settlement agreement.

On July 13, 2000, CAMC filed a cause of action against Parke–Davis and Pfizer in the Circuit Court of Marshall County, alleging that the Cerebyx label was misleading and defective. Through that cause of action, CAMC also sought contribution for the $2.5 million it had paid to settle the claim with the infant's estate. On August 15, 2000, the Defendants successfully removed the case to federal district court.[5] Following the conclusion of trial, a jury returned a verdict in CAMC's favor on December 3, 2001, after finding Parke–Davis to be 70% at fault for the child's death and CAMC to be 30% at fault. The jury awarded CAMC $1.75 million.

Defendants appealed the December 14, 2001, judgment order of the district court to the Fourth Circuit Court of Appeals. By order dated January 8, 2004, the Fourth Circuit certified the following question to this Court:

> Does the law of West Virginia allow a tortfeasor to negotiate and consummate a settlement with the injured party on behalf of itself, before any lawsuit is filed, which would benefit also another party claimed to be a second joint tortfeasor, and thereafter obtain a judgment against the second joint tortfeasor in an action for contribution, although the second joint tortfeasor was not a party to, not aware of, and had no notice of the settlement.

---

1. Acting upon instructions to administer 150 milligrams of Cerebyx, a CAMC nurse obtained three vials of Cerebyx, which were labeled as both "50 mg PE/mL" and "10 mL Vial." The contents of all three vials were administered to the child for a total of 1500 milligrams of Cerebyx, rather than the intended 150 milligrams.

2. Parke–Davis is a subsidiary of Pfizer, Inc.

3. The infant summary proceeding, during which the settlement was approved, took place on July 15, 1998.

4. *See supra* note 2.

5. The Defendants unsuccessfully sought to have the contribution claim dismissed by arguing that this Court's decision in *Howell v. Luckey*, 205 W.Va. 445, 518 S.E.2d 873 (1999), barred such a claim.

This Court, by order, dated February 11, 2004, accepted the certified question and docketed the matter for resolution.

The Fourth Circuit asked this Court to stay proceedings in the certified question matter to allow it to remand the case back to the district court to obtain findings of fact regarding the scope of the release CAMC secured from the child's estate. As a result of additional evidence that was taken, the district court determined that neither Parke–Davis nor its corporate parent Pfizer were included in the release obtained by CAMC. Through an order entered on September 20, 2004, the Fourth Circuit memorialized the district court's findings by stating that the term "defendants," as used in the release, "do[es] not include Parke–Davis and Pfizer." Following receipt of this order from the Fourth Circuit indicating resolution of the scope of release issue, we lifted the stay in the instant matter.

## II. Standard of Review

■ Given that the issue presented is clearly a question of law that is being decided as a matter of first impression, our review is de novo. See Syl. Pt. 1, Chrystal R.M. v. Charlie A.L., 194 W.Va. 138, 459 S.E.2d 415 (1995) (holding that "[w]here the issue ... is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review"). We proceed to answer the question certified to us from the federal appellate court.

## III. Discussion

In response to CAMC's attempt to seek contribution from Parke–Davis and Pfizer, Defendants argue that the law of this state only permits a separate action by a joint tortfeasor for contribution where there has been a judgment of fault against the joint tortfeasors in an action initiated by the injured party or his representative. As support for their position, Defendants look to both statutory and case law. CAMC can only pursue its claim of contribution, accord-

ing to Defendants, if we overrule established precedent[6] and create a new cause of action which permits the assertion of an inchoate right of contribution by a settling tortfeasor against another tortfeasor who was not involved in the settlement agreement and not a party to any action initiated by the injured party.

Citing the language of the only statutory provision addressing the right of contribution by joint tortfeasors, West Virginia Code § 55–7–13 (1923) (Repl.Vol.2000), Defendants argue that recovery can occur only after a judgment has been rendered jointly against several persons. That statute provides:

> Where a judgment is rendered in an action ex delicto against several persons jointly, and satisfaction of such judgment is made by any one or more of such persons, the others shall be liable to contribution to the same extent as if the judgment were upon an action ex contractu.

Id. Both state and federal courts have interpreted this statute as requiring a joint judgment against multiple tortfeasors to invoke the right of contribution. See Bluefield Sash and Door Co. v. Corte Construction Co., 158 W.Va. 802, 805, 216 S.E.2d 216, 218 (1975) (applying W.Va.Code § 55–7–13 and holding that "[u]nder West Virginia law there is no right of contribution between joint tort-feasors in the absence of a joint judgment"), overruled by Haynes v. City of Nitro, 161 W.Va. 230, 240 S.E.2d 544 (1977); Baltimore & Ohio R.R. Co. v. Saunders, 159 F.2d 481, 485 (4th Cir.1947) (finding no action for contribution without predicate joint judgment).

■ In discussing the reach of West Virginia Code § 55–7–13 in Haynes, we observed:

> This statute was originally enacted in 1872–73. It appears to foreclose any doubt that when a judgment is found against joint tort-feasors, any defendant who pays it can collect from the others. But somehow, this Court and the federal courts have found that the statute forecloses contribution between joint tort-fea-

6. See Syl. Pt. 5, Howell v. Luckey, 205 W.Va. 445, 518 S.E.2d 873 (1999) (holding that "defendant may not pursue a separate cause of action against a joint tortfeasor for contribution after judgment has been rendered in the underlying case, when that joint tortfeasor was not a party in the underlying case and the defendant did not file a third-party claim pursuant to Rule 14(a) of the West Virginia Rules of Civil Procedure").

sors in the absence of a joint judgment. It does not. It merely provides that any one or more of joint tort-feasors *who are in judgment* and who pay it, have rights of contribution against their fellow joint tort-feasors.

161 W.Va. at 234, 240 S.E.2d at 547 (emphasis supplied). Asked to determine whether an inchoate right of contribution existed independent of the statutory rights established in West Virginia Code § 55–7–13, the Court in *Haynes* looked to the general right to contribution that existed before the enactment of West Virginia Code § 55–7–13. Citing this Court's decision in *Hutcherson v. Slate*, 105 W.Va. 184, 142 S.E. 444 (1928), we concluded in *Haynes* that the "forerunner of *Code*, 55–7–13, ... did not limit the general right to contribution." 161 W.Va. at 238, 240 S.E.2d at 549. Expounding on the law governing contribution rights in existence prior to the statutory enactment, we stated that " 'the general law provides that one joint tort-feasor may ordinarily require contribution from another, except in cases where the wrong was malum in se....' " *Id.* at 239, 240 S.E.2d at 549 (quoting *Hutcherson*, 105 W.Va. at 190, 142 S.E. at 447) (emphasis omitted). Acknowledging this longstanding precept, we held in syllabus point three of *Haynes* that "[i]n West Virginia one joint tort-feasor is entitled to contribution from another joint tort-feasor, except where the act is *malum in se*." 161 W.Va. at 230, 240 S.E.2d at 545.

Following an examination of the historical underpinnings of contribution in *Haynes*, we proceeded to determine that an inchoate right of contribution exists as between joint tortfeasors. Based on that inchoate right, we allowed a co-defendant to seek contribution against a dismissed defendant where "trial court error" prevented the entry of a joint judgment. *Id.* at 240, 240 S.E.2d at 550. The significance of the *Haynes* decision is our recognition that the statutory right of contribution, which arises pursuant to West Virginia Code § 55–7–13 upon the entry of a joint judgment, did not extinguish the general right of contribution among joint tortfeasors that preexisted the statutory enactment.

*See Haynes*, 161 W.Va. at 238–39, 240 S.E.2d at 549 (discussing *Hutcherson v. Slate* and general law of contribution pre-statutory enactment).

Expounding on the right of a joint tortfeasor to seek contribution either in advance of judgment during the pleading stage or post judgment, we explained:

In *Haynes* ... we traced our prior cases in this area and concluded that a defendant in a negligence action has a right in advance of judgment to join a joint tortfeasor based on a cause of action for contribution. We termed this an "inchoate right to contribution" in order to distinguish it from the statutory right of contribution after a joint judgment conferred by W.Va.Code, 55–7–13 (1923).

*Board of Educ. v. Zando, Martin & Milstead, Inc.*, 182 W.Va. 597, 602, 390 S.E.2d 796, 801 (1990) (citation and footnote omitted). As we articulated in *Zando*, while there is a clear statutory right to seek contribution upon the rendering of a joint judgment, there is also an inchoate right of contribution that exists independent of that statutory right. *See id.* The procedural mechanism for invoking this non-statutory right of contribution, as we identified in *Sydenstricker v. Unipunch Products, Inc.*, 169 W.Va. 440, 288 S.E.2d 511 (1982), is by means of third-party joinder: "In *Haynes* ... we extended a right of contribution to a tortfeasor to bring in as a third-party defendant a fellow joint tortfeasor to share by way of contribution on the verdict recovered by the plaintiff." Syl. Pt. 5, 169 W.Va. at 441, 288 S.E.2d at 513 (citation omitted).

Whether the inchoate right of contribution can be asserted in a given case will generally be determined based upon compliance with the procedural requirements necessary to invoke such right. In *Howell v. Luckey*, 205 W.Va. 445, 518 S.E.2d 873 (1999), we addressed whether the failure of a tortfeasor to implead a third party[7] for purposes of asserting a claim of contribution foreclosed a separate suit following judgment in the primary suit. In *Howell*, the tortfeasor argued that the permissive nature of Rule 14(a) join-

7. *See* W.Va.R.Civ.P.14(a).

der required that he be permitted post judgment to bring a separate action to seek contribution from a third party not named by the plaintiff. After clarifying that " 'the right of contribution established in *Haynes* is not mandatory but must be asserted by the defendant by filing a third-party claim,' " we reviewed the objectives sought to be accomplished by allowing joinder of tortfeasors in the initial lawsuit brought by the injured party. *Howell,* 205 W.Va. at 448, 518 S.E.2d at 876 (quoting *Sitzes v. Anchor Motor Freight, Inc.,* 169 W.Va. 698, 713, 289 S.E.2d 679, 688 (1982)). Referencing our earlier discourse in *Zando,* we iterated:

> The fundamental purpose of inchoate contribution is to enable all parties who have contributed to the plaintiff's injuries to be brought into one suit. Not only is judicial economy served, but such a procedure also furthers one of the primary goals of any system of justice—to avoid piecemeal litigation which cultivates a multiplicity of suits and often results in disparate and unjust verdicts. Moreover, as we have already indicated, joinder of contribution claims serves to ensure that those who have contributed to the plaintiff's damages share in that responsibility.... Finally, while the right of contribution is designed to promote equality among defendants, it is not automatic and must be properly preserved.

*Howell,* 205 W.Va. at 449, 518 S.E.2d at 877 (quoting *Zando,* 182 W.Va. at 603–04, 390 S.E.2d at 802–03).

■ Based on the preference for single-suit resolution of issues combined with the requirement that a defendant must expressly invoke the inchoate right of contribution through means of joinder, we held in syllabus point five of *Howell* that

> A defendant may not pursue a separate cause of action against a joint tortfeasor for contribution after judgment has been rendered in the underlying case, when that joint tortfeasor was not a party in the

underlying case and the defendant did not file a third-party claim pursuant to Rule 14(a) of the West Virginia Rules of Civil Procedure.

205 W.Va. at 446, 518 S.E.2d at 874.

Defendants contend that *Howell* stands as a bar to CAMC's filing of a cause of action against them to assert its claim of contribution. Critically, however, our decision in *Howell* fails to resolve the issue of whether CAMC can assert rights of contribution upon the facts presented. As opposed to this case, there were two causes of actions filed in *Howell,* a primary suit filed by the injured party against a tortfeasor and a secondary suit filed by the named tortfeasor against a second tortfeasor. Because the estate of the deceased child did not bring a lawsuit against CAMC,[8] there was no primary cause of action in which CAMC could have been required by the clear rulings of this Court in *Howell* to implead Defendants to assert its inchoate right of contribution. Another factor distinguishing this case from the facts presented in *Howell* is the absence of any judgment in favor of the injured party and against a tortfeasor. Due to the lack of a lawsuit brought by the child's estate against any party and the lack of consequent judgment against a tortfeasor, *Howell* is not dispositive of the issues presented in this case.

■ Having determined that this matter is clearly one of first impression, we must examine whether there is any basis for extending the inchoate right of contribution currently recognized by this state outside the existing requirements established through case law for asserting that right. As discussed above, the quintessential lawsuit filed by an injured party that results in a judgment against a tortfeasor is nonexistent in the underlying case. In contrast to the prototypical manner in which a claim for contribution is asserted, the factual involvement of the injured party in this case was limited to settlement negotiations between CAMC and the child's estate[9] that resulted in a consum-

---

8. The applicable statute of limitations has passed and no lawsuit was ever filed by the child's estate against any of the parties to this action.

9. While CAMC offered an explanation as to why it did not invite Defendants to the negotiating table, those facts have no bearing on the legal issue before us which concerns the invocation of contribution rights outside the presence of a law-

mated agreement, which released only CAMC from liability.

In arguing that the lack of a lawsuit filed by the injured party does not prevent the application of its inchoate right of contribution, CAMC suggests that the critical elements for asserting contribution are still present. Specifically, CAMC cites to the presence of a jury finding assessing fault as between the tortfeasors; no litigation preceding that jury finding; and payment by CAMC of more than its allocated share of the assessed damages. In its attempt to come within the existing requirements for asserting inchoate rights of contribution, CAMC fails to appreciate the foundation upon which courts in this state have permitted tortfeasors to recover in contribution and further fails to recognize the hindrances inherent to permitting contribution on the facts of this case.

At common law, claims for contribution were not permitted on the theory that a wrongdoer did not deserve the protections of the law. *See Sitzes,* 169 W.Va. at 707–08, 289 S.E.2d at 685 (stating that "[h]istorically, at common law, there was no right of contribution between joint tortfeasors on the theory that the law should not aid wrongdoers"); *see generally* 4B Michie's Jurisprudence *Contribution and Exoneration* § 22 (1999); 18 C.J.S. *Contribution* § 12 (1990). Discussing the development of contribution, we explained in *Sitzes* that

> [t]he right of contribution developed because it was thought unfair to have one of several joint tortfeasors pay the entire judgment and not be able to obtain contribution from any of his fellow wrongdoers. It would seem proper social policy that a wrongdoer should not escape his liability on the fortuitous event that another paid the entire joint judgment.

169 W.Va. at 708, 289 S.E.2d at 686. As noted in *Sitzes,* "since 1872, by virtue of W.Va.Code, 55–7–13, we have permitted a right of contribution between joint tortfeasors after judgment ...." 169 W.Va. at 708, 289 S.E.2d at 686.

We recognized in *Sitzes* how "over the last twenty years there has been a noticeable trend in our tort decisions to ameliorate the rigidity of many common law rules" and indicated that *Haynes* exemplified that movement towards "reducing ... unfairness in tort law." 169 W.Va. at 710, 289 S.E.2d at 686–87. In discussing *Haynes,* through which the right to bring in a joint tortfeasor by means of third-party impleader was established, we explained the import of that decision's "modif[ication] of the strict common law principle that prevented a right of contribution among joint tortfeasors before judgment." *Id.* at 711, 289 S.E.2d at 687. As a result of *Haynes,* joint tortfeasors no longer had to become liable for the entire judgment but were given a way to bring in those joint tortfeasors not named by the plaintiff in the spirit of encouraging more equitable results. *See Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 344, 256 S.E.2d 879, 886 (1979) (stating that "*Haynes* is designed to moderate the inequity which existed in our law that enabled the plaintiff to cast the entire responsibility for an accident on one of several joint tortfeasors by deciding to sue only him").

Having fully reviewed the development of contribution rights in this state, we turn to CAMC's contention that permitting a contribution claim against Defendants upon the facts presented is fully in accord with our decisional law. Provided there is ultimately a judgment through which proportional fault is determined, CAMC argues that such judgment is sufficient to invoke principles of inchoate contribution, regardless of whether the injured party initiated the action which resulted in the judgment. We do not agree. Our case law clearly contemplates that the inchoate right of contribution will be asserted through a cause of action initiated by the injured party against a tortfeasor, rather than by means of a secondary cause of action brought by one tortfeasor against another in the manner CAMC has attempted in the underlying case.

■ Integral to any recovery in contribution is a common obligation owed to an injured party by multiple tortfeasors. We

---

suit initiated by the injured party or his representative.

explained this principle in *Sydenstricker* where we held that: "The doctrine of contribution has its roots in equitable principles. The right to contribution arises when persons having a common obligation, either in contract or tort, are sued on that obligation and one party is forced to pay more than his *pro tanto* share of the obligation." 169 W.Va. at 441, 288 S.E.2d at 513, syl. pt. 4, in part. An attendant principle is that "the amount of recovery in a third-party action based on contribution is controlled by the amount recovered by the plaintiff in the main action." *Sydenstricker*, 169 W.Va. at 452, 288 S.E.2d at 518.

The cynosure of contribution rights—a common obligation owed to an injured party—is missing from the underlying action given the absence of a cause of action brought by the child's estate. Without such suit, there was no resulting common obligation owed to the injured party under the law. As we expounded in *Sydenstricker*, "[i]t is this common or joint liability to the plaintiff on the part of joint tortfeasors that gives rise to a cause of action for contribution." *Id.* at 448, 288 S.E.2d at 516; *see also GAF Corp. v. Tolar Constr. Co.*, 246 Ga. 411, 271 S.E.2d 811, 812 (1980) (observing that "the quintessential element of a claim for contribution [is] the *legal compulsion to pay* on the part of one seeking contribution from a joint tortfeasor") (emphasis supplied).

■ Although there was a judgment at the district court level in the suit CAMC initiated against Defendants, the judgment reached in that cause of action was not the equivalent of a common legal obligation to pay the injured party. Moreover, the underlying basis for the contribution claims asserted by CAMC against Defendants arose out of the *voluntary* payment by CAMC of an amount reached by means of a settlement agreement. In characterizing CAMC's payment as voluntary, as opposed to compulsory, we do not suggest that CAMC was wrong to settle with the child's estate.[10] We choose this designation based on our need to determine whether inchoate rights of contribution can be invoked under the facts presented by the underlying case. *But see Merchants Bank of New York v. Credit Suisse Bank*, 585 F.Supp. 304, 309–10 (S.D.N.Y.1984) (holding that settling party cannot seek contribution from other tortfeasor on rationale that no debt can be implied from voluntary payment).

Given that CAMC acted of its own salutary accord in deciding to settle the claims raised by the child's estate, it cannot claim to have been "forced to pay more than [its] *pro tanto* share." *Sydenstricker*, 169 W.Va. at 441, 288 S.E.2d at 513, syl. pt. 4, in part. And, while CAMC sought to establish a legal obligation jointly owed by it and Defendants through the underlying cause of action, the predicate common obligation owed to the injured party was not established through that proceeding. We are compelled to conclude that the substantive basis for invoking the inchoate right of contribution is not present in this case.[11] *See id.*

■ Given that the right of contribution did not exist at common law, it has been recognized that this right is a combined creature of statute and case law. *See* 18 Am. Jur.2d *Contribution* § 106 (2004). Consequently, "[i]n a suit in which contribution is sought from a joint tortfeasor, the claimant obviously must prove facts sufficient under the statutes and the common law of his or her own state to establish a right to contribution between wrongdoers." *Id.* at § 118. The statutory right of contribution provided

10. It is beyond dispute that "[t]he law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation." Syl. Pt. 1, in part, *Sanders v. Roselawn Memorial Gardens, Inc.*, 152 W.Va. 91, 159 S.E.2d 784 (1968).

11. We note that even in those states where the Uniform Contribution Among Joint Tortfeasors Act has been adopted, contribution is not permitted by one settling tortfeasor barring a release obtained by the settling tortfeasor that expressly extinguishes any liability against all tortfeasors. *See, e.g., G & P Trucking v. Parks Auto Sales*, 357 S.C. 82, 591 S.E.2d 42, 45–46 (App.2003) (finding no right to contribution where settling tortfeasor failed to procure release discharging all tortfeasors from liability and recognizing that running of statute of limitations does not extinguish joint tortfeasor's liability). In this case, as mentioned above, CAMC was the only party released from liability by the child's estate through the executed settlement documents.

**24**

for in West Virginia Code § 55-7-13 authorizes the filing of a separate cause of action by a joint tortfeasor after a judgment has been rendered in a primary cause of action brought by the injured party combined with the payment by one joint tortfeasor of more than his *pro tanto* share of the judgment.

■ Recognizing that it fell outside the protections of West Virginia Code § 55-7-13, CAMC sought to come within the parameters of this state's recognition of inchoate rights of contribution, as first recognized in *Haynes*. While *Haynes* and its progeny permit contribution to be sought by joint tortfeasors in advance of judgment and separate from the protections of West Virginia Code § 55-7-13, the procedural requirements for asserting contribution in advance of a joint judgment are clear. To permit the inchoate right of contribution to be successfully asserted, the injured party must bring a cause of action against an alleged tortfeasor who then joins additional non-named tortfeasors by means of third-party joinder, following which a judgment is rendered that establishes a common obligation owed by the joint tortfeasors to the injured party. Absent compliance with this procedural mechanism for asserting contribution in advance of the rendering of a joint judgment, there is no right of contribution outside the statutory rights provided by West Virginia Code § 55-7-13.

In advocating that contribution should be permitted under the factual scenario presented by this case, CAMC fails to recognize the drawbacks to allowing such recovery. In contravention of the foundational basis for permitting the pre-judgment assertion of contribution rights, all the parties who contributed to the plaintiff's injuries are not brought together in a single cause of action that the plaintiff initiated. *See Zando*, 182 W.Va. at 603-04, 390 S.E.2d at 802-03. In this same vein, there is no assurance that principles of fairness and equity will be advanced if one settling party can affect the amount of settlement independent of other tortfeasors and then seek to make those non-involved tortfeasors contribute to the settlement that it voluntarily undertook to pay. When the non-involved tortfeasor is totally removed from the settlement negotiations, there is little, if any, assurance that such settlement is in accord with such tortfeasor's interests. Rather than contributing to the laudable objective of judicial economy, such separate actions seem by design to encourage, as in this case, the possibility of protracted proceedings. Consequently, the benefits typically realized by the court system from a settlement are significantly vitiated when piecemeal litigation is necessitated to resolve issues arising from the post hoc assertion of inchoate rights of contribution.

■ To answer the certified question,[12] we hold that the inchoate right of contribution recognized by this state can only be asserted by means of third-party impleader in an action brought by the injured party against a tortfeasor. Consequently, a tortfeasor who negotiates and consummates a settlement with an injured party on behalf of itself before any lawsuit is filed cannot subsequently bring an action seeking contribution from a tortfeasor who was not apprised of and not a party to the settlement negotiations and agreement.

Based on the above discussion, we answer the certified question as reformulated[13] in the negative, having determined that there is no recognized right to assert rights of contribution upon the facts as presented.

Certified question answered.

---

**12.** In answering the certified question, we reframe the question to omit the language which indicated that the settlement agreement "benefits others" (e.g. Defendants), based on the findings made by the district court and adopted by the Fourth Circuit with regard to the scope of the release obtained by CAMC. *See* Syl. Pt. 3, *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993) (recognizing this Court's power to reformulate certified questions).

**13.** *See supra* n. 12.