No. 14-0158 - <u>Modular Building Consultants of West Virginia, Inc. et al. v. Poerio, Inc.</u>

**FILED**

**May 21, 2015**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LOUGHRY, Justice, concurring:

I fully concur in the majority's conclusion that Modular advanced a proper contribution claim and write separately to express my strong belief that this Court must revisit the holding in *Charleston Area Medical Center, Inc. v. Parke-Davis*, 217 W.Va. 15, 614 S.E.2d 15 (2005). It is clear from the arguments advanced in the case *sub judice* that there remains considerable confusion about the means by which a viable contribution claim may be asserted. Although the concepts in *Parke-Davis* are only tangentially implicated in this case,[1] at the heart of the ongoing confusion is most certainly the wholly nonsensical conclusion in *Parke-Davis* that contribution among joint tortfeasors may only be had when an injured plaintiff initiates a lawsuit. Not only does this conclusion unfairly place joint tortfeasors somewhat at the mercy of the allegedly injured party, it frustrates our long-standing precept that "[t]he law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation[.]" Syl. Pt. 1, in part, *Sanders v. Roselawn Mem'l Gardens*, 152 W.Va. 91, 159 S.E.2d 784 (1968).[2]

---

[1]Unlike what occurred in *Parke-Davis*, the case *sub judice* commenced with an action by the injured plaintiff, after which the defendant pursued a third-party complaint against the alleged joint tortfeasor.

[2]*Parke-Davis* also impacted another case currently pending before this Court, forcing
(continued...)

1

In *Parke-Davis*, a small child died as the result of an accidental overdose of medication administered at Charleston Area Medical Center ("CAMC"), and CAMC consummated a *pre-suit* settlement with the decedent's personal representative. Thereafter, alleging that the drug overdose was actually caused by improper labeling, CAMC brought a stand-alone claim for contribution against the drug manufacturer, Parke-Davis. The Court held, however, that a tortfeasor who settles with an injured person before suit cannot bring a contribution claim against a joint tortfeasor who was not a participant in the settlement agreement. *Parke-Davis*, 217 W.Va. at 17, 614 S.E.2d at 17, syl. pt. 6. In reaching this conclusion, the Court found that CAMC was not "*forced* to pay more than [its] pro tanto share" because it had voluntarily settled with the plaintiff. *Id.* at 23, 614 S.E.2d at 23 (quoting Syl. Pt. 4, in part, *Sydenstricker v. Unipunch*, 169 W.Va. 440, 288 S.E.2d 511 (1982) (emphasis added)). The Court further found that there was no joint legal obligation between CAMC and Parke-Davis because the decedent's representative had not initiated a legal proceeding against them. *Parke-Davis*, 217 W.Va. at 23, 614 S.E.2d at 23. The Court therefore found that contribution could *only* be brought by way of third-party impleader, thereby necessitating a lawsuit first initiated by the injured party: "Absent compliance with this procedural mechanism for asserting contribution in advance of the rendering of a joint judgment, there is no right of contribution . . . ." *Id.* at 24, 614 S.E.2d at 24.

---

[2](...continued)
a party to assert an implied indemnification claim instead of a claim for contribution. *See State Auto Prop. & Cas. Ins. v. Al-Ko Kober*, No. 14-0556 (argued and submitted for decision on April 8, 2015).

There is little logic to be found here. The *Parke-Davis* Court seemingly punished CAMC for quickly and in good faith settling with the injured person without the necessity of the injured person suing. Certainly, CAMC's prompt redress of the matter is behavior we should encourage. Even though CAMC took the position that fault lay primarily or exclusively with another, given its central role in the injury there was no legal justification why CAMC would not see fit to settle in full. By stripping CAMC of its ability to then seek recovery against an alleged joint tortfeasor, the *Parke-Davis* Court did nothing but encourage defendants and their insurers to force an injured person to initiate litigation, with its commensurate delay, costs, and attorney's fees, for the sole purpose of advocating for an equitable apportionment of fault among those who contributed to the injury. This is disadvantageous to both plaintiffs and defendants.

The real, and only, inadequacy in CAMC's settlement for purposes of pursuing contribution is that it did not extinguish Parke-Davis's liability to the injured person by way of a release, as is made clear in the majority opinion *sub judice*. This procedural failure was only mentioned in passing by way of footnote and played no role whatsoever in the *Parke-Davis* Court's analysis. *See id.* at 23 n.11, 614 S.E.2d at 23 n.11. It is on this basis that the *Parke-Davis* Court should have ruled that CAMC's contribution claim failed–not because of the lack of a lawsuit filed by the representative of the deceased child.

3

In addition to the common sense-defying logic in *Parke-Davis*, its legal analysis is likewise unsound. First, the Court concluded that the voluntary settlement lacked the "forcible" element previously mentioned in our caselaw. *Id.* at 23, 614 S.E.2d at 23. However, a fair interpretation of CAMC's settlement is that the hospital was in fact "forced" to pay more than its share in order to extinguish its liability. CAMC took the position that, at most, it was only partially at fault. Recognizing, however, its inescapable role in the injury, it chose to settle the claims irrespective of this position. If CAMC had offered to pay only what it considered to be its proportionate share of the liability (consistent with its assertion of contribution against Parke-Davis), or had offered no compensation at all (consistent with a claim for implied indemnity), the decedent's personal representative presumably would not have settled and the parties would have had to proceed to litigation simply for CAMC to be able to pay less than a full settlement.[3]

Secondly, the *Parke-Davis* Court's perception that there was no "joint obligation" similarly lacks merit. The "joint obligation" was created by virtue of the joint negligence of the tortfeasors. As noted in the majority opinion, other courts view the creation of a joint obligation similarly. *See MetroHealth Med. Ctr. v. Hoffmann-LaRoche, Inc.*, 685 N.E.2d 529, 532 (Ohio 1997) (concluding that statutory requirement that contribution

---

[3]Again, however, as the majority opinion explains, the correct way for CAMC to have reflected its purported payment of a "full settlement" for the combined negligence of all tortfeasors would have been to obtain a release for all tortfeasors.

4

defendant be "'liable in tort' means no more than that the contribution defendant acted tortiously and thereby caused damages"); *Doyle v. Rhodes*, 461 N.E.2d 382, 388 (Ill. 1984) (finding that whether party is "subject to liability" to plaintiff for purposes of contribution is determined at time of injury).

Insofar as *Parke-Davis* raised purported "practical" considerations, these are of little moment. The Court expressed concern that "there is no assurance that principles of fairness and equity will be advanced if one settling party can affect the amount of settlement independent of other tortfeasors and then seek to make those non-involved tortfeasors contribute to the settlement that it voluntarily undertook to pay." *Parke-Davis*, 217 W.Va. at 24, 614 S.E.2d at 24. This is easily resolved, as most other jurisdictions have acknowledged, by permitting the contribution defendant to challenge the settlement amount to the extent that it is in excess of what is reasonable. Said another way, while it is unlikely that a settling tortfeasor would pay wildly in excess of that which is reasonable for a claim, were that to occur, a contribution defendant may easily challenge the amount with much the same proof as it would have offered if the plaintiff had initiated the suit and it was made a party defendant.

Finally, *Parke-Davis's* lone other "practical" concern was that by permitting a stand-alone contribution claim, "[r]ather than contributing to the laudable objective of

5

judicial economy, such separate actions seem by design to encourage . . . the possibility of protracted proceedings." *Id.* This perhaps makes as little sense as anything in the opinion. If a plaintiff initiates litigation, there is one lawsuit into which all of the parties should be brought. If a plaintiff does not initiate suit, as occurred in *Parke-Davis*, permitting a stand-alone contribution proceeding would, likewise, create one lawsuit. Either way, there is one piece of litigation. How this could be characterized as "protracted" or "piecemeal" is fairly inexplicable.

As footnote eight of the majority opinion points out, none of the "disqualifying factors" for the contribution claim in *Parke-Davis* exist in the case *sub judice*–the injured plaintiff initiated a lawsuit against a single joint tortfeasor, which joint tortfeasor then brought a third-party action against its fellow alleged joint tortfeasor. Regardless, the subsequent removal of the injured plaintiff from the action through the settlement somehow created a misapprehension that the contribution claim was no longer viable. In large part, I fault the tortured conclusions contained in *Parke-Davis* for this impression. To be clear, in no way do I advocate piecemeal litigation for purposes of pursuing contribution or indemnity–where an action is filed, all parties and claims should be brought therein via impleader or consolidation. However, where an injured party does not sue, yet a singular tortfeasor was required to pay what it contends was more than its share of damages to obtain a release from liability, there is no legal justification for precluding that tortfeasor from

6

pursuing joint tortfeasors to achieve an equitable apportionment of damages. Requiring the plaintiff to sue before the defendants can sort out their respective fault, based solely on some dogged obedience to the notion of a "forcible joint obligation," ignores the reality of modern litigation and encourages tortfeasors to hold an injured person at bay until the person is forced to sue.

Accordingly, I respectfully concur in the majority opinion.