685 S.E.2d 693

STATE of West Virginia ex rel. Jill CLITES, Petitioner,

v.

The Honorable Russell M. CLAWGES, Jr., Chief Judge of the Circuit Court of Monongalia County; Teletech Customer Care Management (West Virginia), Inc.; Lor Windle and Michelle Ebert, Respondents.

No. 34887.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 2009.

Decided Oct. 13, 2009.

Georgia L. Gates, Esq., Law Office of Ron L. Tucker, Fairmont, WV, for Petitioner.

Webster J. Arceneaux, III, Esq., Spencer D. Elliott, Esq., Lewis, Glasser, Casey & Rollins, PLLC, Charleston, WV, for Respondents.

PER CURIAM.

Jill Clites, hereafter referred to as "Petitioner," seeks a writ of prohibition to enjoin enforcement of the February 6, 2009, order of the Circuit Court of Monongalia County. This order stayed all circuit court proceedings in the Petitioner's sexual harassment and retaliatory discharge suit pending arbitration of Petitioner's claims pursuant to an Arbitration Agreement. This agreement was signed by the Petitioner at the time of her employment with TeleTech Customer Care Management, Inc., hereafter referred to as "TeleTech." We find that the Petitioner has failed to establish the circuit court exceeded its legitimate authority in requiring arbitration and therefore deny the writ requested. The arbitration agreement between the employer and employee-Petitioner was binding on the parties based on the limited record before us.

## I.

### Background

The record shows that the Petitioner applied for employment with TeleTech as a Customer Service Representative. Thereafter, the Petitioner was informed that she would be hired and was instructed to report to new employee orientation and training at 6:45 a.m., on October 25, 2004. The Petitioner was further informed that her position would be to respond to customer service calls from customers of Bank of America.[1]

On October 25, 2004, the Petitioner reported to employee orientation as instructed. While the exact process of the orientation is not clear from the record, it is clear that at some point during the orientation the Petitioner and all other trainees had a group session with Ms. Trovato, a representative of TeleTech's human resource department. Deposition testimony by Ms. Trovato established that the human resources segment of the new employees' orientation would typically last approximately one and one-half to two hours and cover a variety of topics, issues and paperwork. The record shows that during the Petitioner's particular human resource segment of the orientation, the Petitioner watched a video on work place harassment and was presented with a packet of material containing several forms, acknowledgments and documents requiring the Petitioner's review, completion and signature.

The Petitioner argues that she was required to complete all of the acknowledgments and sign any document requiring her signature during the one and one-half to two hour human resources segment of her orientation and that such a short time-span was insufficient for her to fully understand the documents she was asked to sign. The Petitioner further argues that at the conclusion of the segment, she was required to return all of the documents to Ms. Trovato. TeleTech, however, disputes the Petitioner's assertion that she was required to complete and sign all the documents at the time of her orientation, and cites the deposition testimony of Ms. Trovato from TeleTech's human resource office. Ms. Trovato testified that she often told groups of trainees that they did not need to complete the documents at the time of their orientation, and would say something like "If you're uncomfortable signing something because you've not had a chance to read it in its entirety, we'll set aside time another day."[2] The record also shows that a dispute exists between the parties as to whether each document in the orientation packet was discussed. The Petitioner argues that the documents were only "collectively" discussed by Ms. Trovato. Conversely, TeleTech, citing Ms. Trovato's deposition testimony, argues that each of the documents were individually discussed as the employees were signing them.

The record before us indicates that the Petitioner remained employed by TeleTech until on or about July 12, 2007, when she was terminated. On March 21, 2008, the Petitioner filed suit against TeleTech and others, alleging that her termination was in retaliation for the Petitioner having filed a sexual harassment complaint with TeleTech. The Petitioner asserts in her briefs to this Court that her cause of action was brought pursuant to the West Virginia Human Rights Act and arises from the sexual harassment to which she was directly subjected by an employee of TeleTech and that "the Respondents, TeleTech and Ebert, failed to take timely, requisite, remedial actions both to prevent and to correct the [sexual harassment], in violation of the [Human Rights Act]."

On April 23, 2008, TeleTech responded to the Petitioner's complaint with a motion to dismiss or in the alternative for a stay. In

---

1. While the record is thin on details, it appears that Bank of America outsourced parts of its customer service needs to TeleTech. TeleTech, in turn, would hire employees to fill its needs under the Bank of America account. Thus employees, such as the Petitioner, while providing services for Bank of America were not Bank of America employees, but employees of TeleTech.

2. The documents at issue were tendered to the Court in an Appendix to the Petitioner's brief. These documents all bear what is purported to be the Petitioner's signature and handwritten date, coinciding with the date of the Petitioner's orientation.

support of the motion, TeleTech argued that the Petitioner was legally required to arbitrate her dispute and that the Arbitration Agreement signed by the Petitioner "clearly indicates in underlined text that 'the Company and the Employee *give up the right to a jury trial.*' (Emphasis in original)." On the same date that it filed its motion to dismiss in the circuit court below, TeleTech also filed suit in the United States District Court for the Northern District of West Virginia, naming the Petitioner herein as defendant. TeleTech asserts that there has been a "preemption of Petitioner's claims pursuant to the Federal Constitution's supremacy clause (*U.S. Const., Art. VI, cl. 2* ) and the Federal Arbitration Act (9 *U.S.C.A. § 1 et seq.*)." That suit has since been dismissed.

The Arbitration Agreement contains several provisions, including a forum selection clause requiring disputes to be "submitted to binding arbitration before a sole neutral arbitrator of the American Arbitration Association ("AAA") in Denver, Colorado, in the city in which the Employee is employed by the Company[.]" Further, that each "party shall bear its own fees and costs incurred in connection with the arbitration" and that the arbitrator "shall have the discretion to award fees and costs to the prevailing party in accordance with prevailing law."

By order entered February 6, 2009, the circuit court denied TeleTech's motion to dismiss, but granted its motion to stay. In its findings, the circuit court concluded that the Arbitration Agreement was "a contract of adhesion in that it was a standardized form, containing no individualized terms, offered on essentially a take it or leave it basis." However, the circuit court noted that TeleTech had "asserted and stipulated through affidavit that the arbitration will take place in Morgantown, West Virginia, and that TeleTech will pay for all costs of expenses that would not be incurred by the Plaintiff in court, including the fees of the arbitrator[,] the costs of the hearing room, and a stenographer."

Accepting TeleTech's affidavit and stipulation, the circuit court further held that "the Arbitration Agreement is valid and enforceable" and that the terms of the Arbitration Agreement were "not unreasonably favorable to TeleTech and not so one-sided as to render the Agreement unconscionable." However, the circuit court further held that should the arbitration be terminated by the AAA arbitrator for failure of TeleTech to pay any fee or costs it was obligated to pay, that the Petitioner's action "can resume in Court."

In her petition to this Court the Petitioner challenges the enforceability of the Arbitration Agreement, asserting that it is a contract of adhesion containing unconscionable terms. These unconscionable terms, the Petitioner argues, are that the Agreement requires arbitration in Denver, Colorado, and that the Agreement requires (or exposes) the Petitioner to AAA filing fees and case service fees that "are far in excess of" fees required to maintain a civil claim in the circuit court.

In response to the Petitioner's petition for a writ of prohibition, TeleTech argues that the "terms of the Arbitration Agreement are not unreasonably favorable to TeleTech and not so one-sided as to render the Agreement unconscionable" and that the Petitioner has misconstrued the language of the forum selection clause. Instead, TeleTech argues that the Agreement only requires that the arbitrator be selected from the Denver, Colorado office of AAA and that the actual arbitration would take place as specified in the Agreement-"in the city in which the Employee is employed." The record below shows that TeleTech submitted an affidavit to the circuit court stipulating to resolve any ambiguity regarding the forum selection clause in the Petitioner's favor. Further, TeleTech stipulated that it would pay for all costs incurred in the Arbitration that were in excess of what the Petitioner would otherwise have been obligated to pay to the circuit court as a cost in the circuit court case.

In addition to these arguments, TeleTech has asserted an affirmative defense to the petition for writ of prohibition, claiming that it is entitled to enforcement of the Agreement under the Federal Arbitration Act and that the states have been preempted from interfering with those agreements.

**304**

## II.

### Standard of Review

█ The question presented is whether the Petitioner is entitled to the writ of prohibition she requests. In Syllabus Point 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953), we held that:

Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari.

█ In Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), we further held that:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

With these standards in mind, we turn to the issues presented in the matter before us.

## III.

### Discussion

Our review of the record makes clear that there are two issues before us. First, wheth- er the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, preempts this court from giving judicial review of the Arbitration Agreement that is the genesis of this action. Second, whether the Arbitration Agreement signed by the Petitioner at the time of her new employee orientation is an unconscionable contract under our law.

## III. A.

### Preemption

█ We first address TeleTech's preemption argument. In *City Holding Company v. Kaufman*, 216 W.Va. 594, 598, 609 S.E.2d 855, 859 (2004) we noted that 9 U.S.C. § 2 (1947) of the FAA provides that:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The Supreme Court of the United States has interpreted 9 U.S.C. § 2 (1947) to be an express declaration by the Congress favoring arbitration of disputes "notwithstanding any state substantive or procedural policies to the contrary" and that "[t]he effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Supreme Court has further held that there was "... nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law" and that the "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Southland Corporation v. Keating*, 465 U.S. 1, 11, 16, 104 S.Ct. 852, 79 L.Ed.2d 1

(1984). *See also Perry v. Thomas,* 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)(FAA pre-empted provision of California Labor Law which stated that wage collection actions may be maintained without regard to existence of any private agreement to arbitrate).

■ The Supreme Court has also held that the FAA extends to statutory claims, such as the Petitioner's Human Rights Act causes of action. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits their resolution in an arbitral, rather than a judicial, forum."). *See also 14 Penn Plaza LLC v. Pyett,* —— U.S. ——, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009)(provision in a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law). Preemption also extends to issues of whether there was a fraudulent inducement to enter into an arbitration agreement. *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 400, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (consideration of a claim of fraud in the inducement of a contract "is for the arbitrators and not for the court.").

While it is clear that the FAA preempts state law that would invalidate "or undercut the enforceability of arbitration agreements," *Keating, supra,* 465 U.S. at 16, 104 S.Ct. 852, the issue of whether an arbitration agreement is a *valid* contract is a matter of state contract law and capable of state judicial review. In *State ex rel. Dunlap v. Berger,* 211 W.Va. 549, 555, 567 S.E.2d 265, 271 (2002), we noted that "state court rules of appellate jurisdiction and procedure are not preempted by the Federal Arbitration Act, 9 U.S.C. Sec. 2...." Our holding in *Dunlap* is consistent with the Supreme Court's decision in *Perry,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (emphasis added), where the Court discussed choice-of-law issues that arise when defenses such as standing and unconscionability are raised to challenge an arbitration agree-

ment. In addressing this issue, the Court noted that:

> ... In instances such as these, the text of § 2 provides the touchstone for choosing between state-law principles and the principles of federal common law envisioned by the passage of that statute: An agreement to arbitrate is valid, irrevocable, and enforceable, as a matter of federal law, see *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24 [long citation omitted] (1983), "save upon such grounds as exist at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2. [Emphasis in original text]. Thus state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. [Emphasis in original text]. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. [Citations omitted]. A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes non-arbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot.

Having made clear the parameters of this Court's jurisdiction, we conclude that this Court is not preempted from giving judicial review to determine whether the Agreement at issue is *valid* and enforceable under our state contract law. Having thus concluded, we turn to the Petitioner's arguments that the Agreement is a contract of adhesion that is unconscionable and unenforceable.

### III. B.

### *Enforceability of the Arbitration Agreement*

■ In Syllabus Point 3, *Board of Education of the County of Berkeley v. W. Har-*

*ley Miller, Inc.*, 160 W.Va. 473, 236 S.E.2d 439 (1977), we held that:

It is presumed that an arbitration provision in a written contract was bargained for and that arbitration was intended to be the exclusive means of resolving disputes arising under the contract; however, where a party alleges that the arbitration provision was unconscionable or was thrust upon him because he was unwary and taken advantage of, or that the contract was one of adhesion, the question of whether an arbitration provision was bargained for and valid is a matter of law for the court to determine by reference to the entire contract, the nature of the contracting parties, and the nature of the undertakings covered by the contract.

■ Our review of the Agreement shows it to be six pages long, single-spaced. In summary, the Agreement requires the Petitioner to waive her right to trial by jury for "any disputes that arise between" Petitioner and TeleTech, "including disputes arising after termination" of Petitioner's employment. The only exceptions to the requirement of arbitration are workers' compensation claims and suits filed by TeleTech for injunctive relief. The Arbitration Agreement states that the consideration for the Agreement is the "mutual exchange of promises by the Company and the Employee to arbitrate their disputes" and, in addition, that "Employee acknowledges that his or her offer of and continued employment is consideration for his/her promises contained in this Arbitration Agreement."

Having fully considered the Agreement, we find it to be a contract of adhesion. The entire Agreement is boiler-plate language that was not subject to negotiation and there is no contention in the record that the Petitioner had any role or part in negotiating the terms of the Agreement. In *State ex rel. Saylor v. Wilkes*, 216 W.Va. 766, 773, 613 S.E.2d 914, 921 (2005), we found a similar arbitration agreement to be a contract of adhesion, noting that it was a "[s]tandardized contract form offered ... on essentially [a] 'take it or leave it' basis ... [leaving the] weaker party ... no realistic choice as to its terms."

■ However, the fact that the Agreement is a contract of adhesion does not necessarily mean that it is also invalid, and to determine its validity we look to other factors. *See State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 557, 567 S.E.2d 265, 273 (2002), *citing American Food Management, Inc. v. Henson*, 105 Ill.App.3d 141, 61 Ill.Dec. 122, 434 N.E.2d 59, 62–63 (1982), where we noted that:

"Adhesion contracts" include all "form contracts" submitted by one party on the basis of this or nothing[.] Since the bulk of contracts signed in this country, if not every major Western nation, are adhesion contracts, a rule automatically invalidating adhesion contracts would be completely unworkable. Instead courts engage in a process of judicial review[.] Finding that there is an adhesion contract is the beginning point for analysis, not the end of it; what courts aim at doing is distinguishing good adhesion contracts which should be enforced from bad adhesion contracts which should not.

■ Having determined that the Agreement is a contract of adhesion, we turn to the issue of whether the Agreement is "unconscionable or was thrust upon [the Petitioner] because [she] was unwary and taken advantage of[.]" Syllabus Point 3, in part, *Board of Education of the County of Berkeley v. W. Harley Miller, Inc.* We have previously held that "A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and 'the existence of unfair terms in the contract.'" Syllabus Point 4, *Art's Flower Shop, Inc. v. Chesapeake and Potomac Telephone Company of West Virginia, Inc.*, 186 W.Va. 613, 413 S.E.2d 670 (1991).

As we have noted in our summary of the background of this matter, the record reflects that the Petitioner was notified by TeleTech that she would be offered a position and instructed to report for a new employee orientation. During one segment of this orientation, the Petitioner—and *all* other prospective employees—met with TeleTech's human resources representative. This segment lasted approximately one and one-half to two hours and it was during this segment that

the Petitioner was presented with the Agreement at issue.

 Having fully considered the record, we do not find the Agreement to be unconscionable.[3] The Agreement requires arbitration in Morgantown, West Virginia—the place of the Petitioner's employment—and not Denver, Colorado, as the Petitioner has argued.[4] The Petitioner also has not argued that the Agreement was unconscionable because the arbitrator would be selected from Denver, Colorado. Further, there is no proof in the record before us that the Petitioner is exposed to exorbitant costs as a result of the Agreement as TeleTech is paying all costs associated with the Arbitration in excess of what the Petitioner would have been required to pay to maintain her civil action in the circuit court.

## V.

### *Conclusion*

Accordingly, upon full review of the record, the Petitioner has failed to show that "the lower tribunal's order is clearly erroneous as a matter of law." Syllabus Point 4, in part, *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996). The Petitioner is not entitled to relief in prohibition with regard to

the February 6, 2009, order of the circuit court.

For the reasons set forth herein, the requested writ of prohibition is denied.

Writ Denied.

---

3. While we find this *particular* agreement to be enforceable, we limit the application of our holding to the facts of this case. The record before us was not sufficiently developed for us to address the many varied issues that arise in contract disputes such as the one between the parties to this action, including the issue of whether sufficient consideration was given in exchange for the Agreement. While the Petitioner invited this Court at oral argument to vitiate the contract on the ground that there was a lack of consideration, this issue was not raised below or briefed to this Court. Accordingly, we decline to consider that ground. In *Syllabus Point 6, State ex rel. Saylor v. Wilkes,* 216 W.Va. 766, 613 S.E.2d 914 (2005), we held that:

An employer's promise merely to review an employment application in exchange for a job applicant's promise to submit employment-related disputes not associated with the application process to arbitration does not represent consideration sufficient to create an enforceable contract to arbitrate such employment disputes.

We also note that our precedent has historically given close scrutiny to adhesion contracts that abrogate a party's constitutional entitlement to access to the courts. In *State ex rel. Dunlap v. Berger,* 211 W.Va. at 560, 567 S.E.2d at 277, we granted a writ of prohibition barring enforcement of an order that required the parties in

*Dunlap* proceed to arbitration. In granting the writ, we noted that the:

... constitutional rights—of open access to the courts to seek justice, and to trial by jury—are fundamental in the State of West Virginia. Our constitutional founders wanted the determinations of what is legally correct and just in our society, and the enforcement of our criminal and civil laws—to occur in a system of open, accountable, affordable, publicly supported, and impartial tribunals—tribunals that involve, in the case of the jury, members of the general citizenry. These fundamental rights do not exist just for the benefit of individuals who have disputes, but *for the benefit of all of us.* The constitutional rights to open courts and jury trial serve to sustain the existence of a core social institution and mechanism upon which, it may be said without undue grandiosity, our way of life itself depends. [Emphasis in original text].

4. A forum selection clause in an employment contract, contained in a contract of adhesion, which requires an employee to arbitrate or litigate his or her employment claims in far-away jurisdictions, remotely removed from the employee's actual place of employment or residence, would be troubling to this Court. It would also be troubling if such an employment contract required the employee to be subject to the substantive law of a far-away jurisdiction.