693 S.E.2d 815

**Heather RUCKDESCHEL, Administratrix
of the Estate of Thomas G. Miller,
Jr., Plaintiff Below,**

**v.**

**FALCON DRILLING COMPANY, L.L.C.,
and Texas Keystone, Inc., Defendants
Below, Appellees,**

**Halliburton Energy Services, Inc.,
Defendant Below, Appellant.**

**No. 34865.**

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 9, 2010.

Decided April 23, 2010.

452

James T. Varner, Sr., Esq., Debra T. Hall Herron, Jeffrey D. Van Volkenburg, McNeer, Highland, McMunn and Varner, Clarksburg, WV, for Appellant.

Michael G. Gallaway, Spilman Thomas & Battle, Wheeling, WV, for Appellee, Falcon Drilling Company, LLC.

Scott L. Summers, Offut Nord, Charleston, WV, for Appellee, Texas Keystone, Inc.

WORKMAN, Justice:

The Appellant, Halliburton Energy Services, Inc. ("Halliburton"), appeals from an Order of the Circuit Court of Tyler County, West Virginia, entered October 29, 2008, dismissing its cross-claims for contractual indemnification and contribution against the Appellee Texas Keystone, Inc. ("Texas Keystone"), because Halliburton's indemnification claim was subject to arbitration. The circuit court subsequently entered a February 6, 2009, Supplemental Order holding: 1) that the original dismissal Order was intended to encompass Halliburton's cross-claim for both indemnification and contribution; 2) that Halliburton's implied indemnification and contribution claims against the Appellee Falcon Drilling Co., LLC ("Falcon Drilling"), were still pending; [1] and 3) that its original

---

1. Even though Halliburton's cross-claims for    common law indemnification and contribution

dismissal Order was subject to appeal pursuant to the provisions of West Virginia Rule of Civil Procedure 54(b). On appeal, Halliburton argues the circuit court erred: 1) by misapplying the relevant legal standard for a Motion to Dismiss; 2) by dismissing its cross-claim for contractual indemnification against Texas Keystone when settled contract law requires that Halliburton is entitled to indemnification without arbitrating the issue: 3) by expanding the scope of the arbitration clause; 4) by ruling that Texas Keystone did not waive its right to assert the affirmative defense of arbitration when it failed to include the affirmative defense in its Motion to Dismiss Halliburton's cross-claim; and 5) by dismissing Halliburton's claim for contribution. Based upon a review of the record, the respective parties' briefs and arguments, as well as all other matters submitted before the Court, we reverse the decision of the circuit court and remand the case for further proceedings consistent with this decision.

## I. Procedural and Factual History

The Plaintiffs, Heather Ruckdeschel and Thomas G. Miller, Sr., as co-administrators of the estate of Thomas G. Miller, Jr., deceased, filed a Complaint in the Circuit Court of Tyler County, West Virginia, asserting a wrongful death action against Halliburton, Texas Keystone, and Falcon Drilling. The claim arose from an explosion and fire that occurred on October 19, 2005, at the Wiley No. 8 well site in Tyler County, resulting in the death of Thomas G. Miller, Jr. Mr. Miller, the decedent, was an employee of Falcon Drilling. Falcon Drilling was the driller of Wiley No. 8 well. Texas Keystone was the owner of the well site. Halliburton was contracted by Texas Keystone to perform certain functions to place the well into an operating state.

The Plaintiffs subsequently filed an Amended Complaint, which contained separate counts against Halliburton, Texas Keystone, and Falcon, averring that each of these Defendants was responsible for Mr. Miller's death due to negligence. In its Answer to the Amended Complaint, Halliburton asserted cross-claims against Texas Keystone and Falcon Drilling. The cross-claim against Falcon Drilling was for implied indemnity and common law contribution. The cross-claim against Texas Keystone was for contractual indemnification and contribution. Following the filing of its Answer and Cross-claims against Texas Keystone, Halliburton entered into a settlement with the Plaintiffs.

The sole basis for Halliburton's claim for contractual indemnification against Texas Keystone was a Halliburton Work Order No. 40002179 (hereinafter "work order"). The work order was prepared by Halliburton Energy Services, Inc., and reflects the customer as being Texas Keystone. *The work order, however, was signed by Paul Gelles, an employee of Falcon Drilling.* According to Texas Keystone, Mr. Gelles had no authority to bind Texas Keystone by signing the work order.

The work order contained the following language:

C. RELEASE AND INDEMNITY Customer [ (Texas Keystone) ] agrees to *RE-LEASE* Halliburton Group from any and all liability for any and all damages whatsoever to property of any kind owned by, in the possession of, or leased by Customer and those persons and entities Customer has the ability to bind by contract or which are co-interest owners or joint venturers with Customer. Customer also agrees to *DEFEND, INDEMNIFY AND HOLD* **Halliburton Group HARMLESS** from and against any and all liability, claims, costs, expenses, attorney fees and damages whatsoever for personal injury, illness, death, property damages and loss resulting from: *loss of well control, services to control* a wild well, whether underground or above the surface, reservoir or underground damage, including loss of oil, *gas,* other mineral substances or water, surface damage *arising from underground dam-*

---

against Falcon Drilling remain pending in circuit court, Falcon Drilling has filed a brief before the Court, arguing that the cross-claims against it also should be dismissed. A Motion to Strike Falcon Drilling's brief was filed by Halliburton; however, that motion was denied by the Court. Consequently, as discussed in greater detail *infra* in the body of the opinion, the Court has determined that Falcon Drilling's arguments are properly before it.

*age, damage to or loss of the well bore; subsurface trespass or any action in the nature thereof; fire; explosion; subsurface pressure; radioactivity; and pollution and contamination and its cleanup and control.*

The work order further provided:

**CUSTOMER'S RELEASE, DEFENSE, INDEMNITY AND HOLD HARMLESS** obligations will apply even if the liability and claims are caused by the sole, concurrent, active or passive negligence, fault, or strict liability of one or more members of the Halliburton Group, the unseaworthiness of any vessel or any defect in the data, products, supplies, materials or equipment furnished by any member or members of the Halliburton Group whether in the design, manufacture, maintenance or marketing thereof or from a failure to warn of such defect. "Halliburton Group" is defined as Halliburton Energy Services, Inc., its parent, subsidiary and affiliated companies, insurers and subcontractors and all its/their officers, directors, employees, consultants and agents. . . .

The work order also contained the following provision regarding arbitration:

G. DISPUTE RESOLUTION—Customer and Halliburton agree that any dispute that may arise out of the performance of this Contract shall be resolved by binding arbitration by a panel of three arbitrators under the rules of the American Arbitration Association. The arbitration will take place in Houston, TX.

Rather than filing an Answer to the cross-claim asserted against it, Texas Keystone filed a Motion to Dismiss Cross–Claim of Halliburton Energy Services, Inc. Texas Keystone's position was that there was no enforceable work order or contract against it, because an employee or agent of Texas Keystone did not sign the work order. Further, the issue of whether the indemnification provision was enforceable should be resolved by arbitration as set forth in the contract.

Conversely, Halliburton's contention was that the work order was enforceable and that the arbitration clause in the work order limits the issues to be arbitrated to those that arose out of the "performance" of the contract. Halliburton, therefore, argued that indemnification for damages from a wrongful death suit does not constitute an event that arose out of the "performance" of the contract.

In resolving Texas Keystone's Motion to Dismiss, the circuit court couched the issue before it as whether the construction and application of the work order should be decided by arbitration, rather than by the circuit court. In answering this question, the circuit court opined as follows:

[T]he Court feels the work order is valid. However, perhaps more discovery would be needed on this issue for the Court to decide that issue upon summary judgment. It may be the case that even after discovery is concluded, certain issues of fact remain for jury determination before the court could find as a matter of law that the work order constituted a binding agreement between Texas and Halliburton.

The circuit court further found

This Court has earlier herein opined that from the brief amount of discussion submitted by the parties surrounding the execution of the work order that both parties were bound. It doesn't appear to the Court that Falcon Drilling is a necessary party to an arbitration proceeding. The agent of Falcon Drilling who signed the work order is involved or will be involved in the arbitration, but only as a witness who may be called, or whose affidavit presented in an arbitration proceeding.

The circuit court then granted Texas Keystone's motion, dismissing Halliburton's cross-claim upon the basis that the indemnification claim was subject to arbitration.

## II. Standard of Review

■ The Court reviews a circuit court's order granting a motion to dismiss a complaint under a de novo standard. Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995); *Richardson v. Kennedy,* 197 W.Va. 326, 331, 475 S.E.2d 418, 423 (1996). Having established the applicable standard of

review, the Court proceeds to consider the parties' arguments.

## III. Discussion of Law

### A. Whether Work Order was a valid contract.

■ The issue to be resolved by the Court is whether the circuit court erred in determining that the indemnification question should be arbitrated according to the arbitration provision in the work order. The fundamental problem with the circuit court's decision stems from the absence of a clear ruling by the circuit court as to whether the work order constitutes a valid, binding contract between the parties. In the Order, the circuit court states that it "feels" that there is a valid work order and that the parties were bound. The circuit court, however, further acknowledges that more discovery may be needed on the issue. Moreover, the circuit court suggests that certain facts may need to be decided by a jury before the court could determine if the contract, as a matter of law, was binding.

■ "Generally, the existence of a contract is a question of fact for the jury." Syl. Pt. 4, *Cook v. Heck's Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986). Yet, in this case, despite the circuit court's acknowledgment that discovery may be needed on the issue of whether the work order is a valid contract between Halliburton and Texas Keystone, the circuit court decided the issue without allowing more factual development. Thus, the circuit court placed the proverbial cart before the horse. The circuit court must determine, or allow a jury to determine, whether the work order constitutes a valid contract between the parties before it can decide whether the indemnification claim falls within the scope of the arbitration provisions.

If there is no contract between the parties, then there is no express indemnification between Halliburton and Texas Keystone and no arbitration provision. The only cross-

claims that Halliburton could have asserted against Texas Keystone under this scenario are implied indemnification and contribution.[2]

■ If, however, the circuit court finds that there was a valid, enforceable contract between Halliburton and Texas Keystone, the circuit court must apply this Court's well-established case law, which was most recently reiterated in syllabus point three of *State ex rel. Clites v. Clawges*, 224 W.Va. 299, 685 S.E.2d 693 (2009):

> "It is presumed that an arbitration provision in a written contract was bargained for and that arbitration was intended to be the exclusive means of resolving disputes arising under the contract; however, where a party alleges that the arbitration provision was unconscionable or was thrust upon him because he was unwary and taken advantage of, or that the contract was one of adhesion,[3] the question of whether an arbitration provision was bargained for and valid is a matter of law for the court to determine by reference to the entire contract, the nature of the contracting parties, and the nature of the undertakings covered by the contract." Syllabus Point 3, *Board of Education of the County of Berkeley v. W. Harley Miller, Inc.*, 160 W.Va. 473, 236 S.E.2d 439 (1977).

224 W.Va. at 301, 685 S.E.2d at 695, Syl. Pt. 3 (footnote added).

In the instant matter, given the equivocal determination by the circuit court on the issue of whether the work order was a valid, binding contract between Halliburton and Texas Keystone, the circuit court erroneously dismissed the action by determining that the contract was binding.

### B. Whether Claim is subject to arbitration.

Halliburton next argues that the arbitration provision of the work order does not include the question of indemnification in a wrongful death action involving multiple par-

---

2. For reasons more thoroughly set forth *infra* in the body of this opinion, both the claims of implied indemnification and contribution no longer exist because all the parties settled the underlying wrongful death action with the Plaintiffs.

3. The parties have not raised below, or even suggested, that the arbitration provision is unconscionable, or that it was thrust upon a party, or that it was a part of a contract of adhesion.

ties.[4] Halliburton maintains that the arbitration clause, which required arbitration for "all disputes arising out of performance of the contract," is not applicable to Halliburton's claim for contractual indemnification. According to Halliburton, there is no dispute related to the "performance" of the contract. Consequently, Halliburton argues that its claim for indemnification did not arise from any act, error, or omission sounding in contract, but rather from a tort claim instituted to by a third party after the performance of the contract.

Conversely, Texas Keystone argues that the indemnity claim arises out of Halliburton's performance of the contract. Texas Keystone contends that the Plaintiffs' wrongful death claim alleges negligence, which occurred while Halliburton was performing its duties under the work order. Thus, the "performance of the contract" included Halliburton's allegedly negligent work at the Wiley # 8 well site. Texas Keystone asserts that it is "largely undisputed" that the ignition source for the fire that claimed the decedent's life was a Halliburton truck. Halliburton was the sole defendant performing work with the well head at the time of the fire. Texas Keystone, therefore, argues that the question of Halliburton's claim for indemnity for its alleged negligence is a question for arbitration.

■ As this court previously held in *Board of Education v. W. Harley Miller, Inc.*, 159 W.Va. 120, 221 S.E.2d 882 (1975),

[a] contract providing a procedure for arbitration of disputes, and providing that: (1) all claims, disputes or other matters in question arising out of, or relating to the contract shall be decided by arbitration,

unless the parties mutually agree otherwise; (2) the arbitration agreement shall be specifically enforceable under the prevailing arbitration law; (3) the arbitration award shall be final; and (4) the judgment may be entered upon the award in accordance with applicable law in any court having jurisdiction thereof—, creates a condition precedent to any right of action arising under the contract.

*Id.*, Syl. Pt. 2.

This Court has never precisely addressed the issue of whether the arbitrator or the circuit court resolves the issue of whether a particular claim is arbitrable outside the context of the Federal Arbitration Act, 9 U.S.C. §§ 1–307 (2006). In this case, the circuit court ultimately found that the claim of indemnification was subject to arbitration; but, this determination was devoid of any discussion of the circuit court's resolution of this particular issue.

■ This Court has recently held in syllabus point two of *State ex rel. TD Ameritrade, Inc., v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010), that under the Federal Arbitration Act, 9 U.S.C. §§ 1–307 (2006),

[w]hen a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) *whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement.*

225 W.Va. at 251, 692 S.E.2d at 294, Syl. Pt. 2 (emphasis added). This holding is in ac-

---

**4.** As an ancillary matter regarding arbitration, Halliburton assigns as error the circuit court's determination that Texas Keystone did not waive its right to assert the affirmative defense of arbitration when it failed to include this affirmative defense in the Motion to Dismiss Halliburton's cross-claim. The circuit court correctly resolved this issue in its determination that no waiver by Texas Keystone had occurred.

West Virginia Rule of Civil Procedure 8(c) provides that

[i]n pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of

risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

The Motion to Dismiss filed by Texas Keystone was not a pleading. Consequently, Rule 8(c) did not become applicable until such time as Texas Keystone's motion was denied and it was required to file a responsive pleading. W. Va. R. Civ. P. 12(a)(3)(A).

cord with well-established federal law principles. *See AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *A.T. Massey Coal Co., Inc. v. Int'l Union, United Mine Workers of Am.,* 799 F.2d 142, 146 (4th Cir.1986), *cert. denied,* 481 U.S. 1033, 107 S.Ct. 1964, 95 L.Ed.2d 536 (1987).

■ In an effort to bring uniformity to our arbitration law, the Court extends the application of the concepts set forth in our recent holding in *Ameritrade* to apply to all actions involving arbitration agreements. *See Ameritrade,* 225 W.Va. at 251, 692 S.E.2d at 294, Syl. Pt. 2. To this end, the Court holds that when a circuit court is presented with the issue of whether an arbitration agreement is applicable, the court must determine the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred fall within the substantive scope of that arbitration agreement.

In the instant case, given the circuit court's failure to definitively resolve the initial issue of whether a valid contract exists between Halliburton and Texas Keystone, the issue of the arbitrability of the indemnification claim is called into question. Thus, on remand, the circuit court must not only resolve the issue of whether the a valid contract exists between the parties, but also assuming, arguendo, that a valid contract is found to exist, the circuit must also determine the issue of whether Halliburton's claim for indemnification is subject to the arbitration provision of the contract.

### C. Whether Halliburton's claim for contribution still exists.

■ Halliburton goes to great lengths arguing that its claims for contribution asserted against Texas Keystone and Falcon Drilling are still viable despite its settlement with the Plaintiffs. Just last Term, counsel for Halliburton made this identical argument in *Jennings v. Farmers Mutual Insurance Co.,* 224 W.Va. 636, 640, 687 S.E.2d 574, 578 (2009). This Court resolved this issue by confirming that such claims for contribution were extinguished due to a good faith settle-

ment with a plaintiff. Specifically, the Court stated:

It is an established principle that "[i]n West Virginia one joint tort-feasor is entitled to contribution from another joint tort-feasor[.]" Syllabus Point 3, *Haynes v. City of Nitro,* 161 W.Va. 230, 240 S.E.2d 544 (1977). *See also,* Syllabus Point 3, *Sitzes v. Anchor Motor Freight, Inc.,* 169 W.Va. 698, 289 S.E.2d 679 (1982) ("As between joint tortfeasors, a right of comparative contribution exists *inter se* based upon their relative degrees of primary fault or negligence.").

It is just as established, however, that a right to contribution "can only be invoked by one of the joint tortfeasors *in the litigation.*" 169 W.Va. at 713, 289 S.E.2d at 688 (emphasis added). When a tortfeasor "elect[s] to remain in the case he ... will be liable for contribution in favor of the other joint tortfeasor[.]" *Reager v. Anderson,* 179 W.Va. 691, 704, 371 S.E.2d 619, 632 (1988). If a tortfeasor is not a part of the litigation—whether because of a settlement or because the tortfeasor was not sued—our law is clear that no contribution may be had from that tortfeasor. *See* Syllabus Point 6, *Charleston Area Medical Center v. Parke–Davis,* 217 W.Va. 15, 614 S.E.2d 15 (2005) ("[A] tortfeasor who negotiates and consummates a settlement with an injured party on behalf of itself before any lawsuit is filed cannot subsequently bring an action seeking contribution from a tortfeasor who was not apprised of and not a party to the settlement negotiations and agreement."); *Lombard Canada, Ltd. v. Johnson,* 217 W.Va. 437, 618 S.E.2d 446 (2005) (same); *Board of Educ. v. Zando, Martin & Milstead, Inc.,* 182 W.Va. at 603–04, 390 S.E.2d at 802–03 ("The fundamental purpose of inchoate contribution is to enable all parties who have contributed to the plaintiff's injuries to be brought into one suit. Not only is judicial economy served, but such a procedure also furthers one of the primary goals of any system of justice—to avoid piecemeal litigation which cultivates a multiplicity of suits and often results in disparate and unjust verdicts.").

In the instant case, Farmers Mutual is no longer a "tortfeasor" that remains in the litigation. Accordingly, we believe that

the circuit court's conclusion—that the claims of contribution between Farmers Mutual and Mr. Fike were extinguished by the good faith settlement with the plaintiff—was correct.

224 W.Va. at 640, 687 S.E.2d at 578.

Similarly, in the instant case, because of Halliburton's settlement with the Plaintiffs, it is no longer a "tortfeasor that remains in the litigation." Thus, the claims for contribution between Halliburton, Texas Keystone and Falcon Drilling were extinguished when Halliburton entered its settlement with the Plaintiffs.

## C. Whether Halliburton's claim for implied indemnification against Falcon Drilling still exists.

■ Finally, Falcon Drilling argues that Halliburton can no longer recover implied indemnity against it because Halliburton voluntarily settled with the Plaintiffs and cannot otherwise demonstrate that Halliburton is without fault. Halliburton responds by arguing that Falcon Drilling's argument is premature because Falcon Drilling is not a party to this appeal.

As a preliminary matter, when the Court allowed Falcon Drilling to file a brief and participate in oral argument, this Court determined that Halliburton's appeal necessarily impacts both Texas Keystone and Falcon Drilling. *See Levine v. Headlee*, 148 W.Va. 323, 334, 134 S.E.2d 892, 898 (1964)(*quoting* Syl. Pt. 1, *Buskirk v. Musick*, 100 W.Va. 247, 130 S.E. 435 (1925)) ("Where one party only appeals, but his rights and the rights of others are not only involved in the same question, but are equally affected by the decree or judgment, the appeal of the one will call for an adjudication also of the rights of those not appealing."). Thus, the Court will address the issue presented by Falcon Drilling.

■ As the Court held in syllabus point two of *Harvest Capital v. West Virginia Department of Energy*, 211 W.Va. 34, 560 S.E.2d 509 (2002):

"The general principle of implied indemnity arises from equitable considerations. At the heart of the doctrine is the premise that the person seeking to assert implied indemnity—the indemnitee—has been required to pay damages caused by a third party—the indemnitor. In the typical case, the indemnitee is made liable to the injured party because of some positive duty created by statute or common law, but the actual cause of the injury was the act of the indemnitor." Syl. Pt. 2, *Hill v. Joseph T. Ryerson & Son, Inc.*, 165 W.Va. 22, 268 S.E.2d 296 (1980).

*Harvest Capital*, 211 W.Va. at 36, 560 S.E.2d at 511, Syl. Pt. 2. Further,

[t]he requisite elements of an implied indemnity claim in West Virginia are a showing that: (1) an injury was sustained by a third party; (2) for which a putative indemnitee has become subject to liability because of a positive duty created by statute or common law, but whose independent actions did not contribute to the injury; and (3) for which a putative indemnitor should bear fault for causing because of the relationship the indemnitor and indemnitee share.

*Id.*, 560 S.E.2d at 511, Syl. Pt. 4.

Additionally, in *Hager v. Marshall*, 202 W.Va. 577, 505 S.E.2d 640 (1998), this Court held in syllabus point seven that "[i]n non-product liability multi-party civil actions, a good faith settlement between a plaintiff and a defendant will extinguish the right of a non-settling defendant to seek implied indemnity unless such non-settling defendant is without fault." *Id.* at 580–81, 505 S.E.2d at 643–44. In light of the fact that all the Defendants have entered into good faith settlements with the Plaintiffs and the Plaintiffs' claims against the Defendants have been dismissed, there is no judgment against any of the Defendants requiring any Defendant to pay damages to the Plaintiff. Further, no non-settling Defendant remains in the litigation. Consequently, there is no basis for any implied indemnification claim by Halliburton. Accordingly, Halliburton's claim for implied indemnification against Falcon Drilling has been extinguished.

## IV. Conclusion

Based on the foregoing, the decision of the Circuit Court of Tyler County, West Virginia,

is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.